## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALVIN DRUMMOND, | ) |
| | ) |
|      Petitioner, | ) |
| | ) |
| v. | )    Civ. A. No. 04-1352-GMS |
| | )    Cr. A. No. 01-94-GMS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|      Respondent. | ) |

## **MEMORANDUM OPINION**

_____

Alvin Drummond. *Pro se* petitioner.

Adam Safwat, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

_____

Nov. 14 , 2007
Wilmington, Delaware

**SLEET, Chief Judge**

## I.    INTRODUCTION

Petitioner Alvin Drummond filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 62.)  The Government filed its answer, and Drummond filed a reply.  (D.I. 69; D.I. 71.)  For the reasons discussed, the court will deny Drummond's § 2255 motion without holding an evidentiary hearing.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

On December 11, 2001, a federal grand jury indictment charged Drummond with distributing more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) on two different dates: December 7, 2000 and January 18, 2001.  The court conducted a two day jury trial in July 2002.  During the trial, the Government presented testimony from two undercover police officers, Officer Mailey and Officer Marzec.  Officer Mailey actually purchased the drugs on both dates from Drummond in Drummond's car, and he provided information regarding both drug sales.  Officer Marzec was conducting surveillance from across the parking lots during both drug sales, and he testified as to what he witnessed before and after the two drug sales.  The Government also introduced a videotape which briefly showed Drummond participating in the drug sale on January 18, 2001, as well as evidence from a Drug Enforcement Administration ("DEA") chemist who verified that the substance from both sales was cocaine base.

The theory of the defense was that the police mistakenly identified Drummond as the person who sold the drugs to Mailey.  In support of this theory, the defense presented one of Drummond's friends and two of his relatives who testified that Drummond often let others

1

borrow his car, and that many of his friends and relatives resembled him.

The jury returned a verdict of guilty on both counts alleged in the indictment. (D.I. 37.) Drummond filed a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. (D.I. 40.) In that motion, Drummond argued that the evidence adduced at trial was insufficient to prove that he was the person who sold drugs to Officer Mailey because the Government did not present evidence to establish that it was not a friend or family member who made the drug sales and drove Drummond's car on the dates of the drug sales. The court denied the motion for acquittal after determining that the evidence presented at trial was sufficient for a reasonable jury to conclude that Drummond was the individual who participated in the drug distribution and sales on the dates charged in the indictment. (D.I. 47.) Thereafter, on October 16, 2002, the court sentenced Drummond to 327 months of incarceration followed by four years of supervised release. (D.I. 50.)

Drummond appealed, arguing that this court committed reversible error by denying his pre-trial motion *in limine* to compel the Government to either sequester Marzec during Mailey's testimony or to compel the Government to present Marzec's testimony before Mailey's testimony. *See* (D.I. 58.) The United States Court of Appeals for the Third Circuit held that the court did not abuse its discretion in denying the motion *in limine*, and affirmed Drummond's conviction and sentence. *Id.*

Drummond, acting *pro se*, filed the instant § 2255 motion. The Government filed an answer arguing that the claims in the motion should be dismissed as meritless or procedurally defaulted, and Drummond filed a reply. (D.I. 69; D.I. 71.) Drummond's § 2255 motion is ready for review.

## III. EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. However, the Third Circuit has expressed a preference for an evidentiary hearing when a "defendant is convicted of a crime and alleges that his lawyer failed to appeal the conviction, and there is a potential factual dispute on this issue, the defendant is entitled to a hearing before the District Court to prove that he made the request and that the lawyer failed to honor it." *Solis v. United States*, 252 F.3d 289, 295 (3d Cir. 2001).

As explained below, the record conclusively demonstrates that Drummond is not entitled to relief for any of his claims. Although Drummond asserts ineffective assistance of counsel, he does not allege that counsel failed to file an appeal despite his request to do so. Accordingly, the court concludes that an evidentiary hearing is not warranted.

## IV.    DISCUSSION

Drummond asserts the following grounds for relief: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; and (3) judicial error. The court will address the claims in seriatim.

### A.  Claim A: Ineffective assistance of counsel

A federal prisoner's claim for ineffective assistance of counsel is properly raised for the first time in federal district court as a § 2255 motion rather than on direct appeal. *See United States v. Garth,* 188 F.3d 99, 107 n.11 (3d Cir. 1999); *United States v. Cocivera,* 104 F.3d 566,

3

570 (3d Cir. 1996). To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). The first prong of the *Strickland* test requires the petitioner to demonstrate that counsel's performance fell below an objective standard of reasonableness. *Id.; Marshall v. Hendricks,* 307 F.3d 36, 85 (3d Cir. 2002). The petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. When evaluating the allegations under this prong, a court must defer to the counsel's reasonable strategic decisions, and the mere fact that the strategic decision was unsuccessful does not make such a decision unreasonable. *Id.* Generally, the petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 688-89 (internal citation omitted).

The second prong of the *Strickland* test requires the petitioner to affirmatively show that counsel's deficient performance prejudiced his case. *Strickland,* 466 U.S. at 692-93. To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland,* 466 U.S. at 687-88; *Marshall v. Hendricks,* 307 F.3d 36, 85 (3d Cir. 2002).

Drummond asserts that counsel committed twelve errors during the course of his trial. The court will group the similar errors together and discuss each type of error separately.

### 1. Claim A-1: failure to investigate potential witnesses

Drummond contends that counsel failed to interview the "only potential witness or any officers whose names [were] provided to him." (D.I. 62, at A1.) Drummond, however, does not

4

identify the "potential witness" or the other officers he believes counsel should have interviewed, nor does he describe the potential testimony from such witnesses. Therefore, the court will deny claim A-1 because Drummond cannot demonstrate prejudice under *Strickland*.[1] *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 297 (3d Cir. 1991)("[A habeas petitioner] cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3d Cir. 1996)

### 2. Claims A-2 and A-6: counsel failed to review evidence suppressed by government that could have been used to impeach "the" police officer

Drummond's next complaint is that "counsel allowed the government to suppress evidence which could have been used to impeach the officer without [first] reviewing it" and that counsel failed to "raise discovery violations." (D.I. 62.) Drummond does not identify "the" police officer whose testimony counsel could have impeached, nor does he identify the wrongly suppressed evidence or the discovery violations that counsel failed to contest. Therefore, the court concludes that the instant allegation is too vague and conclusory to warrant federal habeas relief. *Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir. 1987).

### 3. Claims A-3, A-7, and A-8: counsel did not challenge the indictment after learning that it was obtained through the use of Officer Marzec's false and misleading testimony

Drummond appears to view Marzec's grand jury testimony as inconsistent with Marzec's

---

[1]Additionally, the court notes that defense counsel did call two of Drummond's family members and one of his friends to testify at trial, thereby refuting Drummond's assertion that counsel did not "interview" other potential witnesses.

5

trial testimony. Thus, in his third, seventh, and eighth allegations, Drummond contends that counsel should have challenged the probable cause for issuing the indictment by arguing that Officer Marzec perjured himself before the grand jury. The court construes these claims to assert that counsel erred by failing to raise the issue of Marzec's alleged perjury at trial.

A witness testifying under oath or affirmation commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). However, the fact that a witness contradicts his testimony does not create an inference of perjury; as noted by the Third Circuit, "there are many reasons testimony may be inconsistent; perjury is only one possible reason." *Lambert v. Blackwell*, 387 F.3d 210, 249 (3d Cir. 2004).

Marzec provided the following testimony about the December 7, 2000 drug sale during the grand jury proceeding on December 11, 2001:

Marzec:     I observed, as I stated before, the undercover officer and confidential source arriving at the location. I observed Mr. Drummond arrive also. I observed the undercover officer and the confidential source enter Mr. Drummond's vehicle. I observed what [] appeared to be [a] conversation taking place between the parties within the vehicle. A short period later I observed the undercover officer exit, along with the confidential source exit Mr. Drummond's vehicle and re-enter the undercover officer's vehicle.

(D.I. 69, at App. 6 to App. 7.)  At trial, Marzec provided the following testimony about the December 7, 2000 drug sale:

Marzec:     The light was dark. Very poor lighted area. . . . I observed the way the vehicle was positioned at that time, I observed headlights hit the vehicle several times and I saw what I believed, I'd say, probably with 95-percent certainty, that I believed it was Alvin Drummond in the vehicle. . . . I was

6

looking catty-corner from the motel parking lot . . . with binoculars.

(D.I. 43, at pp. 132-33.)

Comparing Marzec's testimony from the two proceedings, it is not clear that there is, in fact, any inconsistency. Nevertheless, to the extent the two statements are inconsistent, the court concludes that the differences are minor and do not indicate that Marzec knowingly provided false information. Rather, Marzec's statements can be explained by the fact that they were made at different stages of Drummond's criminal proceeding. Indeed, the defense theory of mistaken identification did not evolve until after the grand jury proceeding. It would appear, then, that the poor lighting of the first drug buy only became an issue when the theory of mistaken identification became manifest. Moreover, Marzec's qualification as to the certainty of his identification to 95 percent actually tends to lend credibility to his identification testimony.[2] Therefore, the court concludes that the record does not support Drummond's assertion that Marzec committed perjury.

Having determined that Marzec did not commit perjury at trial or in front of the grand jury, the court concludes that counsel did not provide ineffective assistance by failing to object to Marzec's testimony in either instance as perjurious. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). Accordingly, the court will deny claims A-3, A-7, and A-8.

### 4. Claims A-4, A-7, A-9, and A-10: counsel failed to impeach Marzec at trial with his false and/or inconsistent grand jury testimony

Drummond next argues that counsel was ineffective for not impeaching Marzec at trial with his inconsistent grand jury testimony and for generally permitting the Government to elicit

---

[2]Indeed, during the quoted portion of Marzec's grand jury testimony, he offered no estimate as to the certainty of his observations of Drummond.

false and misleading testimony from Marzec. As previously explained, Marzec did not perjure himself before the grand jury or before the trial court. Therefore, counsel did not perform ineffectively by failing to advance the meritless perjury theory.

Furthermore, given the slight inconsistency between Marzec's trial and grand jury testimony, the court concludes that counsel's decision to forego impeachment on this basis was objectively reasonable. Accordingly, the court will deny claims A-4, A-7, A-9, and A-10 because an attorney's failure to raise meritless arguments or objections does not constitute ineffective assistance. *See Rompilla v. Horn*, 355 F.3d 233, 249 n.9 (3d Cir. 2004), rev'd on other grounds, *Rompilla v. Beard*, 545 U.S. 374 (2005) .

### 5. Claims A-11 and A-12: counsel failed to object to prosecutor's eliciting Marzec's identification of Drummond with respect to the first drug buy

In claims A-11 and A-12, Drummond contends that counsel should have objected to the fact that the prosecutor elicited Marzec's identification of Drummond at the first drug buy despite the prosecutor's pre-trial assurance that he would not elicit such an identification. In order to determine whether counsel's failure to object to the discrepancy between the prosecutor's proposed and actual questioning of Marzec in relation to the first drug buy constitutes ineffective assistance, the court must initially consider whether the prosecutor's actions constitute misconduct. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see*, *e.g.*, *United States v. Lively*, 817 F. Supp. 453, 465 (D. Del.), *aff'd*, 14 F.3d 50 (3d Cir. 1993)(unpublished table decision). The relevant question is whether the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.

8

During the pre-trial conference on June 26, 2002, the prosecutor stated that Marzec would only give a "potential" identification of Drummond with respect to the first drug sale because of the poor lighting, but that Marzec would identify Drummond with respect to the beginning of the second drug sale. (D.I. 45, at pp. 10-11.) However, during the in-chambers conference on July 11, 2002, the prosecutor muddied the situation with seemingly contradictory statements about Marzec's potential testimony regarding the first drug buy. First, the prosecutor stated that Marzec was not comfortable identifying Drummond as the driver in the first drug buy because of the poor lighting. Given Marzec's expression of discomfort, the prosecutor stated that he would not ask Marzec to identify Drummond with respect to the first drug buy, and also that Marzec would not testify at all about the first drug buy. (D.I. 43, pp. 8-12.) Just a short time later, however, the prosecutor stated that he would not object if defense counsel asked Marzec on cross-examination if he could identify Drummond as a participant in the first drug buy, explaining that

> He would say, yes, it was Alvin Drummond. It's just that if you pushed him and you said, Well, how can you be absolutely sure, he told me I can't say for sure. I can't swear it's absolutely, definitely the same person as opposed to someone similar-looking the first time because of poor lighting . . .

(D.I. 43, at p. 12.) Thereafter, the trial started, and during the prosecutor's direct examination of Marzec, Marzec made the statement forming the basis of Drummond's instant complaint, namely, that he was "95 percent" certain that Drummond was the driver of the car in the first drug buy.

At first blush, Marzec's statement may appear to support Drummond's allegation that the prosecutor reneged on his pre-trial conference proffer that he would not elicit an identification of

9

Drummond from Marzec with respect to the first drug buy. However, the basic premise of the prosecutor's statements during both pre-trial conferences was that Marzec could not state with absolute certainty that Drummond was the driver of the car in the first drug buy because of the insufficient lighting, but that Marzec could definitively identify Drummond as the driver of the car during the second drug buy. The actual wording of the prosecutor's questions with respect to both drug buys reveals that the prosecutor did not act inconsistently with the essence of his pre-trial proffers and that the prosecutor did not knowingly elicit the testimony at issue here. For example, after establishing that the lighting during the first drug buy was insufficient, the prosecutor asked: "And would you say, because of that light, would you be able to say for certain whether the person that you observed dealing with Officer Mailey was the defendant or not?" (D.I. 43, at p. 135.) To which, Marzec volunteered that he was "95 percent" certain that Drummond was the driver. Conversely, after establishing that the lighting was good during the second drug buy, the prosecutor asked: "Is there any doubt in your mind that the person you've identified as Alvin Drummond was the defendant that day?" *Id.* at p. 135. Marzec replied, "That's correct. I[t] was Alvin Drummond seated here at counsel['s] table." *Id.* In short, as proffered by the prosecutor, Marzec positively identified Drummond for the second drug buy but provided a less certain identification of Marzec for the first drug buy.

The court's conclusion that the prosecutor did not intentionally renege on his proffer with respect to Marzec's testimony for the first drug buy is supported by two other portions of the transcript. First, at the close of the Government's case, the prosecutor made the following proffer to the court:

> The only thing I can think of, which I can do now, your Honor, I wanted to make a

> record for appeal because of the fact that Officer Marzec's testimony was different from what I - - slightly different from what I proffered to you and I recognize that if the jury convicts him, this might be an appellate issue. I thought it might be wise to do a quick proffer if you would be willing to take it . . .
>
> I just wanted to say, your Honor, when I proffered, I said that the agent wouldn't describe the first drug purchase, the one in December 2000, and I actually asked him the question, you know, can you say it wasn't him expecting, no I can't be sure because of the light. He gave the answer, I can only be 95-percent sure. That's why his testimony was slightly different.

(D.I. 43, at pp. 200-202.) Additionally, in his closing argument, the prosecutor stated:

> In fact, think about Officer Marzec's testimony. He told you that when he was watching the December 7 drug purchase of 2000, he couldn't be a hundred percent sure it was the defendant. He admitted that. Now, if he had it in for the defendant, if he wanted to jump to conclusions, if this stuff about how they knew it was him was all just fabricated to make up for their mistakes that they made supposedly in the investigation, why did he come in and admit that to you? Why did he come in and say, look, it was dark, I was too far away, I am 95 percent but I can't be one hundred? Why did he say that unless he and Officer Mailey weren't exactly what they appeared to be, which is good officers, who did a good investigation and who caught a drug dealer?

(D.I. 44, at p. 109-110.)

Based on this record, the court concludes that the prosecutor did not intentionally elicit Marzec's identification of Drummond in the first drug buy. Therefore, counsel did not perform deficiently by failing to object to the prosecutor's examination or to Marzec's response as inconsistent with the prosecutor's proffer during the pre-trial conference.

Furthermore, even if it would have been reasonable for counsel to object to the prosecutor's line of questioning, the court concludes that Drummond was not prejudiced by counsel's failure to do so. Officer Mailey was the undercover agent directly involved in the two separate drug buys, and he testified as to the specific details of both and positively identified Drummond as the seller in both transactions. A forensic chemist identified the substance

11

involved as crack cocaine. Additionally, the defense did not produce any evidence from which the jury could infer that any of the people resembling Drummond had a motive to expose Drummond to the danger of prosecution by using his car to sell drugs, and none of Drummond's witnesses stated that Drummond did not drive his blue Taurus on December 7, 2000 or January 18, 2001. Viewing the evidence in a light most favorable to the Government, the court concludes that there was sufficient evidence for a rational jury to convict Drummond of both charges beyond a reasonable doubt. Accordingly, the court will deny claims A-11 and A-12 as meritless.

### 6. Claim A-5: counsel failed to use certain evidence in support of Drummond's motion *in limine*

Drummond argues that counsel failed to use certain evidence to support his pre-trial motion *in limine*. Although not entirely clear, Drummond appears to assert that counsel should have advised the court during the motion *in limine* proceeding that Marzec's proposed trial testimony was false. The record reveals that counsel did, in fact, assert that Marzec's grand jury testimony was inconsistent with the prosecutor's proffer of Marzec's trial testimony, and counsel argued that Marzec should therefore be sequestered to prevent him from adjusting his testimony to correspond with Mailey's testimony. Accordingly, the court will deny this claim as meritless.

### 7. Claim A-13: counsel did not object to the admission of the DMV photos at trial

In claim A-13, Drummond argues that counsel should have objected to the admission of the DMV photos at trial because they were not produced in discovery. The record belies this assertion. The Government produced the photos to defense counsel on July 3, 2002, eight days prior to trial. (D.I. 69, No. 2, at App.12 to App.19.) Accordingly, the court will deny this claim as meritless.

12

### 8. Claim A-14: counsel failed to argue that the "transaction" was never proven

Drummond asserts that counsel failed to argue that the two drug sales were never proven. Although not entirely clear, Drummond appears to argue that counsel did not effectively challenge Mailey's and Marzec's testimony regarding the actual details of the two drug buys.

The record reveals that counsel thoroughly cross-examined Mailey regarding his identification of Drummond and the details of the two drug sales. The record also reveals that counsel thoroughly cross-examined Marzec regarding his observations of both drug sales. Additionally, counsel presented three witnesses to support the defense theory that the police incorrectly identified Drummond as the individual involved in the two transactions. Based on this record, the court concludes that Drummond has failed to satisfy either prong of the *Strickland* test. Accordingly, the court will deny claim A-14 as meritless.

### 9. Claim A-15: counsel failed to consult with Drummond regarding issues to raise on appeal

Drummond argues that counsel did not consult with him about unspecified issues to present on appeal. Therefore, as an initial matter, the instant claim is too vague to warrant habeas relief. *See Zettlemoyer*, 923 F.2d at 297; *Jones*, 336 F.3d at 255.

Additionally, assuming that the issues raised in Drummond's § 2255 motion mirror the issues he would have raised on appeal, the court concludes that counsel's failure to raise these issues on appeal or his alleged failure to consult with Drummond on those issues does not warrant relief. As explained throughout this opinion, the record does not support Drummond's allegations of perjury, prosecutorial misconduct, discovery violations, evidentiary violations, or judicial error. Moreover, considering the strength of the Government's case against Drummond,

13

which included Mailey's absolute identification of Drummond as the seller of drugs in both

charged transactions, the chemist's identification of the drugs as crack cocaine, and the DMV

records proving that the car involved in both transactions was registered to Drummond, the court

cannot discern any other potentially meritorious issues that counsel could have presented on

appeal. Accordingly, the court will deny this claim.

### 10. Claim A-16: Counsel refused to call an expert witness at trial

Finally, Drummond contends that counsel provided ineffective assistance by failing to

call an expert witness at trial. Once again, Drummond fails to support his claim with specifics,

and that failure provides the court with enough reason to deny the claim for vagueness.

Additionally, however, the court finds that the record indicates that defense counsel considered,

but rejected, calling an expert witness to rebut the Government's expert testimony regarding the

chemical analysis of the drugs involved. *See* (D.I. 22, at p. 10.) Nothing in the record indicates a

reason to question the veracity of Government witness' testimony regarding the chemical

analysis of the drugs involved. Moreover, an attorney's decision regarding witnesses to call is

strategic, and Drummond has not provided anything to rebut the strong presumption of

reasonableness applicable to counsel's strategic decision to not call an expert. *See, e.g.,*

*Henderson v. DiGuglielmo*, 138 Fed. Appx. 463, 469-470 (3d Cir. 2005). Therefore, the court

will deny this last allegation.

### B. Prosecutorial Misconduct

Drummond raises the following eleven allegations of prosecutorial misconduct: (1) the

prosecutor suppressed evidence that could have been useful to the defense; (2) the prosecutor did

not clarify Marzec's grand jury testimony regarding his identification of Drummond; (3) the

.

14

prosecutor permitted Marzec to give false and misleading testimony before the grand jury and at trial; (4) the prosecutor knowingly misled the jury by presenting Marzec as the Government's sole witness; (5) the prosecutor improperly stated in his opening argument that Marzec could identify Drummond; (6) the prosecutor misinformed the court of the evidence Marzec used to obtain the indictment; (7) the prosecutor used false evidence to obtain the indictment and conviction; (8) the prosecutor improperly stated during his closing argument that the defense witnesses were not police officers; (9) the prosecutor failed to inform the court that Marzec could not identify Drummond; (10) the prosecutor improperly vouched for the truthfulness of the Government's witnesses in his closing statement despite his knowledge that Marzec had provided false testimony; and (11) the prosecutor elicited Marzec's perjured testimony during the trial, which caused the jury to convict Drummond. (D.I. 62.) The court will group the claims into three categories: prosecutorial misconduct based on the use of perjured testimony (claims B-2, B-3, B-4, B-5, B-6, B-7, B-9, and B-11), prosecutorial misconduct based on improper remarks in the closing argument and improper vouching (claims B-8 and B-10), and prosecutorial misconduct based on the suppression of exculpatory evidence (claim B-1).

As an initial matter, the court agrees with the Government's argument that Drummond procedurally defaulted all of his prosecutorial misconduct claims by failing to raise them in his direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982). Consequently, the court is barred from reviewing the merits of these procedurally defaulted claims absent a showing of cause for the procedural default and prejudice resulting therefrom, or actual innocence. *Bousley v. United States*, 523 U.S. 614, 621-22 (1998). Here, however, Drummond vaguely asserts ineffective assistance of counsel as the cause for his procedural default. *See Coleman v.*

15

*Thompson*, 501 U.S. 722, 755 (1991). "Although the question of the merit of an underlying

claim is not an explicit step under *Strickland*, [the Third Circuit has] held that it is a

determinative factor in the deficient performance prong of the Strickland analysis in at least some

contexts." *Rompilla*, 355 F.3d at 249 n. 9. Therefore, in order to determine if counsel's

performance could excuse Drummond's failure to present these eleven prosecutorial misconduct

claims on direct appeal, the court will consider whether the claims have merit.

### 1. Presentation of perjured testimony

In claims B-2 through B-7, B-9 and B-11, Drummond contends that the prosecutor

knowingly permitted Marztec to perjure himself, either before the grand jury or at trial. In order

to succeed on this theory, Drummond must demonstrate: (1) Marzec committed perjury; (2) the

Government knew or should have known of Marzec's perjury; (3) the testimony went

uncorrected; and (4) there is a reasonable likelihood that the false testimony could have affected

the verdict. *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004).

The court concludes that the instant claim is meritless. First, as previously explained, the

court has already determined that Marzec did not commit perjury during the grand jury

proceeding or during the trial, and therefore, Drummond cannot satisfy the first three

requirements necessary to establish a viable prosecutorial misconduct claim. As for the fourth

requirement, Drummond cannot demonstrate that Marzec's statements regarding Drummond's

involvement in the first drug buy negatively affected the verdict. Officer Mailey was the actual

undercover agent who purchased the drugs from Drummond in Drummond's car, and his

absolute identification of Drummond in both drug buys provided a sufficient basis for a

reasonable jury to conclude that Drummond was the person who sold the drugs to Mailey.

Accordingly, the court will deny claims B-2 through B-7, and B-9.

## 2. Improper remarks in closing argument and improper vouching

In claim B-8, Drummond contends that the prosecutor's closing argument contained the following improper remark about the defense witnesses: "The evidence you hear[d] was the testimony of people who are related to the defendant, not police officers, not unbiased, close family, they said themselves that they are a family that sticks together." (D.I. 44, at 94-95.) In order to succeed on this prosecutorial misconduct claim, Drummond must demonstrate that the prosecutor's statement affected the fairness of the trial because it manipulated or misstated the evidence, or it implicated other specific rights. *See United States v. Young,* 470 U.S. 1, 11 (1985).

After viewing the prosecutor's statement in context, the court concludes that claim B-8 lacks merit. When the prosecutor made the statement at issue, defense counsel had already set the foundation for his mistaken identification argument by presenting two members of Drummond's family who testified that many of their relatives resemble Drummond. The jury knew that those witnesses were related to Drummond, and that the witnesses considered their family to be very close-knit. By making the statement that police officers were unbiased, the prosecutor was merely highlighting the fact that family members are typically inherently biased as a result of the familial relationship. The prosecutor did not juxtapose the police and "civilian" witnesses and argue to the jury that it should favor the police testimony merely because the witnesses were police and, therefore, more worthy of belief. Thus, the court concludes that the prosecutor's statement did not unfairly prejudice Drummond because it did not misstate or manipulate the evidence.

17

In claim B-10, Drummond claims that the prosecutor improperly vouched for the truthfulness of the police officers' testimonies in his closing argument. Although Drummond does not identify the particular instance of vouching, a review of the prosecutor's closing argument reveals that he commented on the extent of Mailey's experience and demeanor, and that, in his rebuttal, the prosecutor stated that Marzec and Mailey were "good officers."

A prosecutor cannot bolster his case by vouching for the credibility of a witness. *United States v. Dispoz-O-Plastics, Inc.*, 172 F.2d 275, 283 (3d 1999). A prosecutor's statements will constitute vouching when two criteria are met:

(1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and (2) this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the record. Thus, it is not enough for a defendant on appeal to assert that the prosecutor assured the jury that a witness' testimony was credible. The defendant must be able to identify as the basis for [the prosecutor's comment on witness credibility] explicit or implicit reference to either the personal knowledge of the prosecuting attorney or information not contained in the record.

*Walker*, 155 F.3d at 187.

Reviewing the aforementioned statements under this standard, the court concludes that the prosecutor's remarks do not constitute vouching. First, the prosecutor's comment about Mailey's experience was proper because Mailey had testified as to his experience as police officer. Second, the prosecutor's statement about Mailey's demeanor did not constitute vouching because the jury members were able to observe Mailey's demeanor for themselves when he testified. And finally, although the prosecutor's statement that Marzec and Mailey were "good officers" may appear to constitute an improper expression of the prosecutor's personal opinion when viewed in isolation, the prosecutor only made the statement in his rebuttal to defense counsel's closing argument that the two officers had jumped to conclusions and that their

18

investigation merited an "F". Therefore, the court concludes that prosecutor's "good cop" statement was a permissible reference based upon the evidence produced at trial in an effort to counter defense counsel's remarks denigrating Mailey and Marzec.

Furthermore, even if the prosecutor's "good officer" statement constituted vouching, the court concludes that Drummond is not entitled to habeas relief. "Vouching aimed at the witness's credibility and . . . based on extra-record evidence is deemed non-constitutional error." *United States v. Vitillo*, 490 F.3d 314, 329 (3d Cir. 2007). In turn, "non-constitutional error is harmless where it is highly probable that the error did not contribute to the judgment and the court has a sure conviction that the error did not prejudice the defendant." *Id.* A court determines prejudice by examining the "scope of the comments and their relationship to the proceeding, the extent of any curative instructions, and the strength of the evidence against the defendant." *Id.*

Here, the prosecutor only made the "good officer" statement once, after describing the evidence, and he did not express it in the form of a personal opinion. The court instructed the jurors that their decisions must be based on the evidence seen and heard in the courtroom, and that the statements and arguments made by the attorneys did not constitute evidence to be weighed in reaching a decision. (D.I. 44, at pp. 76-77.) Additionally, the weight of the evidence favored the government; Mailey had already provided an absolute identification of Drummond for both drug buys, and both the DMV records and Marzec corroborated Mailey's testimony. Thus, even if the prosecutor's statement at issue constituted vouching, the court is convinced that the error was harmless and did not contribute to Drummond's conviction. Accordingly, Drummond was not prejudiced by the prosecutor's remark.

19

### 3. The prosecutor suppressed exculpatory evidence

In claim B-1, Drummond argues that the "prosecutor suppressed evidence that could of [sic] been useful to the defense (audio tape)." (D.I. 62, at p. 9.) Drummond does not provide sufficient details about the audiotape to demonstrate prejudice resulting from the prosecutor's alleged suppression. Therefore, the court will deny this claim as too vague to warrant habeas relief.

### 4. Conclusion

The court concludes that the evidence of record does not support Drummond's prosecutorial misconduct claims. Therefore, counsel did not perform deficiently by failing to raise these meritless claims on direct appeal, which necessarily defeats Drummond's attempt to establish cause on the basis of counsel's performance. Accordingly, the court will deny the prosecutorial misconduct claims as procedurally barred.[3]

### C. Judicial Errors

Finally, Drummond contends that this court erred in two respects during the course of his trial. First, he claims that the court failed to correct the fact that Marzec perjured himself before the grand jury. Second, he claims that the court should not have permitted the prosecutor to elicit Marzec's identification of Drummond at trial. The court has already denied the underlying perjury claim and the improper identification claim as meritless. Therefore, the court concludes that Drummond's allegations of judicial error based on those two claims are also without merit.

---

[3]Of course, the court's prior analysis has already demonstrated that the claims lack merit. Therefore, the court alternatively denies the prosecutorial misconduct claims as meritless.

20

## V.    CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether to issue a certificate of appealability. *See* Third
Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate only if the
petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §
2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district
court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529
U.S. 473, 484 (2000).

The court is dismissing Drummond's § 2255 motion after determining that his claims are
meritless. The court is persuaded that reasonable jurists would not find this assessment
debatable. Therefore, Drummond has failed to make a substantial showing of the denial of a
constitutional right, and the court will not issue a certificate of appealability.

## VI.    CONCLUSION

For the reasons stated, Drummond's 28 U.S.C. § 2255 motion to vacate, set aside, or
correct sentence is dismissed. An appropriate order shall issue.

21

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALVIN DRUMMOND, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. A. No. 04-1352-GMS |
| | ) Cr. A. No. 01-94-GMS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## ORDER

For the reasons set forth in the Memorandum Opinion issued in this action today, IT IS

HEREBY ORDERED that:

1. Petitioner Alvin Drummond's motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 is DISMISSED, and the relief requested therein is DENIED. (D.I.

62.)

2. A certificate of appealability will not issue for failure to satisfy the standard set

forth in 28 U.S.C. § 2253(c)(2).

$N_{ov.}$ 14 , 2007

Wilmington, Delaware

CHIEF, UNITED STATES DISTRICT JUDGE

FILED

NOV 1 4 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE